**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DR. FOFO, LLC d/b/a PLANET FOLLYWOOD and ELLIOT ASHLEY KOHN d/b/a DJ E, <br><br> Defendants. | Case No.: 2:17-cv-01270-DCN <br><br> **ORDER, JUDGMENT AND PERMANENT INJUNCTION AGAINST DR. FOFO, LLC d/b/a PLANET FOLLYWOOD** |

This matter is before the Court upon the Motion of Plaintiff, Phoenix Entertainment Partners, LLC (hereinafter "Phoenix"), pursuant to Fed. R. Civ. P. 55(b)(2), for a judgment by default against Defendant Dr. FOFO, LLC d/b/a Planet Follywood (hereinafter "FOFO"). Based upon a review of the evidence before the Court, the Court makes the following:

### FINDINGS OF FACT

1. On May 17, 2017, Phoenix commenced this lawsuit against FOFO and Defendant Elliot Ashley Kohn d/b/a DJ E (hereinafter individually "Kohn," collectively with FOFO, the "Defendants," and each individually as a "Defendant") alleging trademark infringement involving counterfeiting, unfair competition and a violation of South Carolina's Unfair Trade Practices Act.

2. On June 22, 2017, FOFO was duly served with the Complaint and Summons issued by the Clerk.

3. FOFO failed to answer or otherwise respond to the Complaint within the time required by Fed. R. Civ. P. 12.

1

4. On September 21, 2017, a default was entered against FOFO.

5. At all times relevant to this action, Phoenix was the owner of U.S. Trademark Registration No. 4,099,045, for the word mark SOUND CHOICE®, and of U.S. Trademark Registration No. 4,099,052, for the design mark SOUND CHOICE & Design® (the "Marks").

6. Phoenix consistently used the ® symbol to denote the registration of the Marks and thereby to give notice to the public that the Marks are federally registered.

7. FOFO hired a contractor to provide commercial karaoke services at its bar on at least more than one (1) occasion and had the right and ability to control whether its contractors use authentic or counterfeit materials to provide services.

8. FOFO had actual knowledge of the infringing and counterfeit nature of its contractors' karaoke materials.

9. Despite that knowledge, FOFO refused to terminate its contractors' services and continued to receive a financial benefit from the provision of infringing karaoke services at its establishment through the attraction of paying patrons to its establishment.

10. FOFO's contractor(s) used a reproduction, counterfeit, or copy of the Marks in connection with providing karaoke services, by displaying that reproduction, counterfeit, or copy during the provision of their services.

11. Neither FOFO nor its contractor(s) have a license to create digitized copies of Phoenix's karaoke discs or of the karaoke music tracks contained thereon.

12. An unauthorized digitized copy of Phoenix's karaoke discs or karaoke music tracks is a counterfeit.

13. Neither FOFO nor its contractor(s) have a license to use counterfeit tracks in connection with their provision of karaoke services.

14. FOFO's unauthorized use of counterfeits of the Marks is likely to cause consumer confusion by deceiving FOFO's customers and patrons into believing that FOFO's services are being provided with Phoenix's authorization.

15. FOFOs actions were willful and knowing.

16. FOFO has the right to control the means and the details of the process by which its third-party agent accomplishes its respective tasks, including, without limitation, controlling the dates and starting and stopping times of shows, determining whether particular content (such as offensive-language content) is permitted to be played at shows, determining the style and genre of music played at shows, and determining whether the third-party agent is permitted to use FOFO's equipment (such as television displays, sound equipment, stage, etc.) as part of the shows.

17. FOFO has the right to control whether or not the activities occur on its premises.

18. FOFO had knowledge of its contractors' direct infringement of the Sound Choice Marks.

19. Despite this knowledge, FOFO continued to use its contractor(s) to commit direct infringement of the Sound Choice Marks during the course of providing karaoke entertainment services to its patrons.

20. FOFO had the right and ability to supervise its contractors' activities in its establishment, including, without limitation, the right and ability to determine whether its contractor provided karaoke entertainment services in connection with the Sound Choice Marks.

21. FOFO knew or had reason to know, based on the amounts it was paying its contractor(s) to provide the services, its interaction with its contractor(s), and its knowledge of its contractors' infringement, that its contractor(s) was/were unlikely to be able to respond for significant damages for infringement.

22. The arrangement between FOFO and its contractor(s) exploited its contractors' marginal financial condition in two ways: first, by reducing the amount FOFO had to pay its contractor(s) to provide the services in a manner that would be profitable to its contractor(s); and second, by attempting to allocate the burden of any claims of infringement to its contractor(s), an undercapitalized "dummy" operation, in a naked effort to avoid financial responsibility and liability for the infringement while remaining the principal beneficiary of the infringement.

23. The arrangement between FOFO and its contractor(s) is a sham designed to reap the rewards of infringement while escaping the liabilities.

24. Despite FOFO having knowledge of the infringing character of the activities and the ability to control whether those activities occur, FOFO elected not to stop the infringement from occurring, instead continuing to enjoy the benefits of the infringement.

25. To the extent that it is not directly liable as an infringer, FOFO is secondarily liable for the continuing infringement that has occurred and is occurring on its premises.

26. Phoenix has been harmed by FOFO's infringing activities and will continue to be harmed if FOFO is not enjoined from further infringement.

27. Phoenix has elected to receive an award of statutory damages from FOFO.

Based upon the foregoing facts, the Court makes the following:

## **CONCLUSIONS OF LAW**

1. This Court has jurisdiction over the subject matter of this action as it arises under an act of Congress relating to trademarks, particularly including federally registered trademarks.

2. This Court has personal jurisdiction over the parties, and venue is proper in this judicial district.

3. By virtue of FOFO's default, the allegations pled in the Complaint are deemed to have been admitted by FOFO.

4. By using contractors who used counterfeit materials bearing the Marks to put on karaoke shows and by displaying the Marks during the course of those shows at FOFO's establishment, FOFO has committed acts that are likely to cause confusion among consumers of their services as to authorization, sponsorship, and affiliation of its services by or with Phoenix. In particular, customers and/or patrons who visit FOFO's establishment are likely to be deceived into believing that the karaoke services are being provided with Phoenix's authorization.

5. FOFO had the right and ability to supervise the infringing activity and had a direct financial interest in the infringing activity.

6. Consequently, FOFO's activities constitute trademark infringement involving counterfeiting.

7. FOFO is vicariously liable for the infringing actions of its contractor(s).

8. FOFO's infringement was willful and knowing.

9. Phoenix is entitled to a damage award for infringement of its registered trademarks in an amount between $1,000.00 and $2,000,000.00 per mark, as the Court may determine.

10. The Court finds that an award of $50,000.00 is supported by the evidence of record and will be sufficient to compensate Phoenix for its losses and to deter others from engaging in similar conduct.

11. As the prevailing party in this matter involving willful and deliberate infringement by FOFO, Phoenix is also entitled to attorneys' fees and costs in the amount of $2,631.25. The Court finds that the sum of $2,631.25 is reasonable and appropriate.

12. Phoenix is entitled to a permanent injunction against FOFO's acts of infringement of its trademarks.

## JUDGMENT AND PERMANENT INJUNCTION

Accordingly, it is ORDERED, ADJUDGED, and DECREED as follows:

1. Judgment by default is hereby entered in favor of Phoenix against Defendant Dr. FOFO, LLC d/b/a Planet Follywood.

2. Pursuant to 15 U.S.C. § 1117, FOFO is hereby ordered to pay the sum of $52,631.25 to Phoenix, with accrual of interest from the date of entry of this judgment until paid at the legal rate, pursuant to 28 U.S.C. § 1961.

3. FOFO and its agents, employees, and all persons in active concert or participation with them and having knowledge of this Order, except for and specifically excluding Defendant Elliot Ashley Kohn d/b/a DJ E, are hereby permanently ENJOINED:

(a) from using or displaying (including making, copying, sharing, distributing, selling, or otherwise using, and particularly including use to provide karaoke services), commercially or otherwise, any karaoke accompaniment track that is marked with either the mark in U.S. Trademark Registration No. 4,099,045, for the word trademark SOUND CHOICE®, or the mark in U.S. Trademark Registration No. 4,099,052, for the design trademark SOUND CHOICE & Design®, without the prior, express written permission of Phoenix or its successor-in-interest, if any, to the ownership of those marks or in any manner that is inconsistent with the following media-shifting policy established by Phoenix:

(i) The karaoke host must purchase one authorized copy of each Sound Choice karaoke track on an authorized, original medium (CD) for each alternative medium (such as a hard drive) to which the host wishes to shift the content.

(ii) If a track is shifted to another medium, the entire track must be shifted (i.e., no "chopping").

(iii) The karaoke host must maintain ownership and possession of both the authorized original medium and the alternative medium during the entire time in which the content has been shifted to the alternative medium.

(iv) The karaoke host must not use the authorized original medium to produce a karaoke show or for any other commercial purpose (including shifting the content to another alternative medium) during the time in which the content has been shifted to the alternative medium.

(v) If the karaoke host discontinues possession of either the authorized original medium or the alternative medium, the associated tracks must be removed from the alternative medium.

(vi) The karaoke host notifies Phoenix that the karaoke host intends to conduct or has conducted a media-shift or format-shift, and submits to a verification of adherence to Phoenix's policy; and

(b) from making, copying, sharing, distributing, selling, or otherwise using digitized copies of karaoke accompaniment tracks, commercially or otherwise, which tracks are marked with any mark or other designation belong to any person from whom FOFO has not obtained written authorization from the owner thereof to make, copy, share, distribute, sell, or otherwise use the digitized copy.

4.      This Court retains jurisdiction over this matter for purposes of enforcement of this Order.

**IT IS SO ORDERED.**

November 14, 2017
Charleston, South Carolina

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE