**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC | ) ) ) | |
| Plaintiff, | ) ) | No. 2:17-cv-01270 |
| vs. | ) ) | **ORDER** |
| DR. FOFO LLC *d/b/a Planet Follywood*, and ELLIOT ASHLEY KOHN *d/b/a DJ E* | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on plaintiff Phoenix Entertainment Partners, LLC's ("Phoenix") motion to compel, ECF No. 24, and on defendant Elliot Ashley Kohn's ("Kohn") motions to exclude, ECF No. 25, and for summary judgment, ECF No. 26. For the reasons set forth below, the court denies the motion for summary judgment, denies the motion to compel, and grants the motion to exclude.

## I. BACKGROUND

This matter arises from Kohn's allegedly infringing use of Phoenix's federally registered trademark, "Sound Choice." Phoenix is a North Carolina limited liability company. ECF No. 1 ¶ 7. Planet Follywood[1] is a South Carolina limited liability company in Folly Beach, South Carolina. Id. ¶ 8. Kohn is a DJ and entertainer who provides karaoke-related services at Planet Follywood. Id. ¶¶ 8–9. Phoenix owns Sound Choice, a leading brand of karaoke accompaniment tracks. Id. ¶ 18. Over the last thirty

---

[1] Planet Follywood is operated by former defendant Dr. Fofo, against whom a default judgment was entered on November 14, 2017, ECF No. 22

1

years, Phoenix's predecessor-in-interest, Slep-Tone Entertainment Corporation ("Slep-Tone"), re-recorded almost 17,000 Sound Choice-brand songs to be used for karaoke. Id. ¶ 19. Phoenix also licenses the use of its Sound Choice brand to commercial karaoke venues. Id. ¶ 20. According to Phoenix, the popularity of the Sound Choice karaoke tracks stems from their high quality and accuracy to the original recording. Id. ¶ 21. Phoenix also contends that the association of the Sound Choice brand with an entertainer's karaoke business confers on the entertainer and venue a perception in the marketplace—and among karaoke patrons—of legitimacy and professionalism. Id. ¶ 22.

Phoenix alleges that Kohn infringed upon Phoenix's rights in the Sound Choice marks by displaying the identical marks while hosting his karaoke shows at Planet Follywood—the exact type of services for which Phoenix's trademark registrations were issued. Id. ¶¶ 33–35. Phoenix argues that Kohn could have copied only the communicative content of the tracks he pirated, but that instead he chose to copy the Sound Choice marks separately, which demonstrates that he intentionally added the marks to his pirated tracks in order to confer additional legitimacy upon his services. Id. ¶ 34. These karaoke shows are generally the "principal entertainment focus" of Planet Follywood, and the misuse of Phoenix's mark financially benefits the venue and Kohn. Id. ¶¶ 42–44. Furthermore, Kohn allegedly advertised the availability of karaoke entertainment services at Planet Follywood. ¶ 30.

Phoenix filed the instant suit on March 17, 2017, bringing the following causes of action: (1) trademark infringement under 15 U.S.C § 1114(1); (2) unfair competition under 15 U.S.C. § 1125(a); (3) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code §§ 39-5-20, et. seq. Id. ¶¶ 69–99. Phoenix alleges Kohn used a

counterfeit copy of the Sound Choice marks, without any license or permission from Phoenix, in connection with the provision of karaoke entertainment services by repeatedly displaying the mark during the provision and advertisement of those services. Id. ¶¶ 70, 80. Phoenix claims that Kohn's use of the marks is likely to confuse Planet Follywood's customers into believing that the karaoke services are provided with Phoenix's authorization. Id. ¶¶ 7, 73, 81. Phoenix also alleges that Kohn's activities caused a competitive injury to Phoenix by denying it revenue from the sale or licensing of authorized services and depriving it of control over the use of the Sound Choice marks. Id. ¶¶ 82, 86.

Phoenix filed a motion to compel on January 11, 2018, ECF No. 24, and Kohn filed his response on January 25, 2018, ECF No. 29. Kohn filed a motion to exclude witnesses on January 11, 2018, ECF No. 25, and Phoenix filed its response on January 25, 2018, ECF No. 30. Kohn filed a motion for summary judgment on January 11, 2018, ECF No. 26, and Phoenix filed his response on January 25, 2018, ECF No. 28. The motions are ripe for the court's review.

## II. STANDARD

### A. Motion for Summary Judgment

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255, Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon

4

another, or the mere existence of a scintilla of evidence.  See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191.  Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'"  Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)).  If the adverse party fails to provide evidence establishing that the fact-finder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'"  Id. (quoting Anderson, 477 U.S. at 248).

**B. Motions to Compel and to Exclude**

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1) (note that the 2015 Amendments omit the phrase "reasonably calculated to lead to the discovery of admissible evidence").  Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Id.  If a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Georgia, 852 F.2d 788, 792 (4th Cir. 1988)).

### III. DISCUSSION

#### A. Motion for Summary Judgment

Kohn moves for court to grant summary judgment on Phoenix's federal trademark infringement and unfair competition claims. ECF No. 26 at 1–7. Kohn then argues that, after granting summary judgment on those claims, the court should dismiss or decline to exercise supplemental jurisdiction over Phoenix's SCUTPA claim. Id. at 8.

Phoenix has brought claims for trademark infringement under 15 U.S.C. § 1114 and for unfair competition under 15 U.S.C. § 1125(a). To succeed on an action for trademark infringement under §1114, a plaintiff must prove:

> (1) that it owns a valid mark; (2) that the defendant used the mark "in commerce" and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers.

Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 152 (4th Cir. 2012) (quoting § 1114). Section 1125(a) acts more broadly to create "a remedy against someone who engages in unfair competition by, inter alia, falsely designating the origin of a product." Phoenix Entm't Partners v. Rumsey, 829 F.3d 817, 822 (7th Cir. 2016). Section 1125(a) creates a civil action against

6

> "any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or devise . . . or any false designation of origin . . . or misleading representation of fact, which [] is likely to cause confusion . . . as to the affiliation, connection or association of such person with another person, or as to the origin [] or approval of [the plaintiff's] goods, service, or commercial activities . . ."

15 U.S.C. § 1125(a). "In order to prevail on claims of trademark infringement and unfair competition under the Lanham Act, a plaintiff is obliged to show the court that it ha[d] a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 170 (4th Cir. 2006) (internal quotation marks omitted). The Fourth Circuit had identified nine factors for courts to consider when analyzing the likelihood of confusion:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 153 (4th Cir. 2012).

Kohn asks the court to grant summary judgment on the "sole issue" of whether there is any evidence that Kohn's display of Phoenix's Sound Choice trademark during Kohn's performance is likely to cause confusion among the patrons of Planet Follywood about whether Phoenix sponsored or approved of Kohn's performance and his use of those songs. ECF No. 26 at 1. Kohn first argues that the Seventh Circuit decision in Phoenix Entm't Partners v. Rumsey precludes this court from finding a likelihood of confusion in this instance. Id. at 5–6. Kohn next contends that the court should grant summary judgment because there is no evidence of actual confusion. Id. at 6–7. The

court addresses each argument in turn. There are no disputes of material fact that relate to this likelihood of confusion analysis.

   1. **Rumsey**

First, Kohn argues that Rumsey should prevent this court from finding a likelihood of confusion regarding the endorsement of Kohn's services. ECF No. 26 at 5. In Rumsey, Slep-Tone, Phoenix's successor-in-interest, sued a pub for playing illegitimate "bootleg" copies of Slep-Tone's karaoke tracks. Rumsey, 829 F.3d at 821. Slep-Tone asserted claims for both trademark infringement and unfair competition under the Lanham Act. Slep-Tone's primary theory of their case was that the defendant's use of unauthorized copies of Slep-Tone's Karaoke tracks would lead customers to believe that they were seeing and hearing a legitimate Slep-Tone track, when they were actually seeing an unauthorized bootleg copy. Id. Slep-Tone also argued that viewers may be confused into thinking that Slep-Tone sponsored the defendants' services. Id. at 823. The district court dismissed the claims because it did not find that the defendants' unauthorized use of the Slep-Tone trademark and trade dress was likely to cause confusion among customers about the "source of any tangible good containing the karaoke tracks they were seeing and hearing." Id.

The Seventh Circuit upheld the district court, finding it significant that "what lies at the heart of the defendants' alleged wrongdoing is the unauthorized copying of Slep-Tone's karaoke tracks," which is ultimately an issue of copyright law, not trademark. Id. The vast majority of the court's discussion then focused on whether there would be confusion about the source of the tangible good—the Slep-Tone product. Because the patron would not see the source of the product during the karaoke performances, it would

see and hear the same content regardless of whether it was a legitimate Slep-Tone product or a bootleg version—thus, there could not be any confusion in the marketplace that amounted to infringement of the trademark. Id. at 828–829. As the Supreme Court has made clear when addressing a trademark infringement case in relation to goods, as opposed to services, "a consumer's confusion must be confusion as to the source of the tangible good sold in the marketplace." Id. at 829 (citing Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 36 (2003)). Because the pub customers in Rumsey never interacted with the medium from which the tracks were played, there could not be confusion about the source of the tangible good. Id. This particular conclusion does not apply to the instant action because Phoenix has tailored its theory from prior suits to eliminate the argument about confusion of the source of goods. The sole basis for Phoenix's current trademark infringement and unfair competition claims is that Kohn's unauthorized use of the federally protected trademark will cause confusion in the marketplace about whether Phoenix sponsors Kohn's karaoke services.

The Rumsey court also addressed this "sponsorship of services" issue, but in far less detail than it devoted to the "goods" issue. The Seventh Circuit found that the display of the Sound Choice mark while the karaoke track played did not falsely suggest that Slep-Tone endorses the performance. Id. at 829. According to the Seventh Circuit, "[s]o long as [the] mark is not overtly used to market the performance, there is no risk that a [] patron might think that the [venue] is sponsoring or endorsing the performance." Id. The court found that Slep-Tone had not alleged that the pub promoted itself as offering Sound Choice karaoke products, and that the pub had therefore not infringed the mark by causing confusion among customers in regards to the provision of services. Id.

Kohn relies on this language to argue that the court should grant summary judgment here, because Phoenix has admitted that neither Kohn nor Planet Follywood have overtly marketed the club or Kohn's services using the Sound Choice mark. ECF No. 26 at 5. Phoenix has not put forth any evidence of Kohn overtly marketing his shows by using the Sound Choice mark. However, the court declines to follow the Rumsey court's lead and instead looks to decisions from other courts addressing Lanham Act claims by Phoenix that have ruled differently than Rumsey on the question of whether a DJ's display of the Sound Choice mark could cause confusion about the sponsorship of that DJ's services.

For example, Phoenix Entm't Partners, LLC v. Aguayo, 2016 WL 9526665, at *3 (M.D. Fla. Oct. 24, 2016), the court found that the display of the Sound Choice mark during karaoke shows "gives the impression that Plaintiff has authorized [the defendant] to both play the song and display Sound Choice's trademarks and trade dress," and that this "unauthorized display of Plaintiff's marks in combination with potential consumer confusion sufficiently alleges a cause of action under the Lanham Act." While the Aguayo court made that finding in response to a motion to dismiss, as compared to a motion for summary judgment as is before the court now, the Aguayo court's reasoning applies equally here. The court finds that the display of Phoenix's mark on the screen where the karaoke lyrics appear throughout an entire evening of karaoke performances could cause confusion among customers that the holder of the Sound Choice mark approves of Kohn's use of their product in his services. This is exactly the type of situation that §1125(a) addresses—when someone uses a mark in connection with services that is likely to cause confusion about the affiliation or approval of those services. 15 U.S.C. §1125(a).

The court's decision to not grant summary judgment based solely on Rumsey is further informed by the fact that "the likelihood of consumer confusion is an 'inherently factual' issue that depends on the unique facts and circumstances of each case." Anheuser-Busch, Inc. v. L. & L. Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992). Based on Phoenix's arguments in favor of likelihood of confusion, which the court addresses in the next section, a jury could find that Kohn's use of the mark created a likelihood of confusion about the origin or sponsorship of his services. See id. ("[T]he jury, which represents a cross-section of consumers, is well-suited to evaluating whether an 'ordinary consumer' would likely be confused.")

### 2. Likelihood of Confusion Analysis

Kohn next argues that Phoenix has failed to demonstrate a likelihood of confusion because Phoenix has admitted that it does not have any evidence about actual confusion of customers, and because no inferences of a likelihood of confusion can be drawn in Phoenix's favor from the evidence currently before the court. ECF No. 26 at 7. Kohn only devotes half a page to these arguments. First he cites from Phoenix's 30(b)(6) deposition in which Phoenix's representative stated that Phoenix does not possess any direct evidence that any of the Planet Follywood patrons were actually confused. Id., ECF No. 26-2, Phoenix Dep. 116:24–117:21. The court is not convinced by this because evidence of actual confusion is only one of the nine "likelihood of confusion" factors that a court must consider when determining whether there has been a trademark infringement or unfair competition under the Lanham Act.

In response to Kohn's claim that no inferences can be drawn of a likelihood of confusion—a single sentence which Kohn does not support with any additional factual or

legal assertions—Phoenix discusses at length the manner in which each of the other factors in the Lanham Act analysis have been satisfied. First, Phoenix claims that "the Sound Choice Marks are strong and well-established marks" that are "associated with every karaoke accompaniment track Phoenix produces." ECF No. 28 at 4. For the second, third, and fourth factors, Phoenix notes that the Sound Choice mark that Kohn uses during his karaoke services is "virtually identical" Phoenix's mark, and that Kohn uses it for "virtually identical services" in similar venues as those DJs that paid for a license to use the trademark properly. Id. at 5. Fifth, Phoenix argues that Kohn's prominent display of the mark before, during, and after each karaoke track is a valuable and low-cost method of advertising that Phoenix uses to expose its brand to customers. Id. In regards to the sixth factor—the defendant's intent—Phoenix argues that because Kohn was aware of Phoenix's request that Dr. Fofo stop infringing upon their mark, yet continued to use the mark during his karaoke services, Kohn's activities were conducted in bad faith, with the intent to use the Sound Choice marks for his own gain. Id. at 6. The seventh factor, actual confusion, has already been discussed above in section III.A.2. For the eighth factor—the quality of the defendant's product—Phoenix argues that Kohn's karaoke services using Sound Choice-branded karaoke tracks are inferior to those of Phoenix's licensees because Kohn's tracks were illegally "ripped" from the original karaoke tracks. Id. Finally, Phoenix claims that consumers of karaoke services are unlikely to use a high degree of care in determining the source of the services presented to them and will assume that Kohn's use of the counterfeit karaoke tracks is actually an approved use of legitimate Phoenix products. Id. at 7.

Phoenix has put forth sufficient arguments from which a jury could find that there exists a likelihood of confusion. Because Kohn has not addressed these nine factors at all—other than his cursory argument that there is no evidence of actual confusion—he has not offered the court any reason to rule that, as a matter of law, these factors weigh in Kohn's favor. Thus, the court denies Kohn's motion for summary judgment.

**B. Motion to Compel**

Phoenix asks the court to compel Kohn to provide discovery responses to Phoenix's Interrogatories Nos. 12, 13, and 14, and to produce for inspection his karaoke system, playback equipment, files, operating software, and discs in response to Phoenix's Requests for Production Nos. 10, 11, 12, and 13. ECF No. 24 at 1. Phoenix requests the identification and production of the physical equipment containing the non-original karaoke accompaniment tracks and audio-visual discs that Kohn uses during his allegedly infringing karaoke services. Id. at 2. Phoenix also request sanctions in the amount of reasonable expenses, including attorney's fees, that Phoenix has incurred with respect to this motion. Id. 9.

Federal Rule of Civil Procedure 26 allows discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Kohn objected to the above Interrogatories and Requests for Production on the grounds that the requests are not relevant to Phoenix's claim and not proportional to the needs of the case. Id. at 3–4. Phoenix argues that the information requested is relevant to determining whether Kohn used a counterfeit mark during the performance of his karaoke services. Id. at 7. Phoenix's entire argument for this motion to compel centers around its allegations that

Kohn illegally obtained the karaoke tracks and violated Phoenix's narrow policy for media-shifting and format-shifting—i.e. the particular manner in which legitimate purchasers of Phoenix's product are allowed to copy it.

Phoenix contends that Kohn's answers to these Interrogatories and Requests for Production are Phoenix's only means of obtaining this information. ECF No. 24 at 8. Phoenix also argues that complying with the requests would have only taken five or less hours, and that the benefit of Phoenix having this information far surpasses Kohn's burden and expense in complying. Id. Phoenix claims that it could use online software to remotely access Kohn's computer and hard drive to search solely the audio-visual files, without imposing an undue burden on Kohn, or that it could hire a third-party to complete the task. ECF No. 24 at 8. Phoenix also states that it is willing to limit the scope of the inspection of Kohn's karaoke system and discs to Sound Choice data and material. ECF No. 24 at 7.

Kohn responds that none of the requested discovery is remotely relevant to the "likelihood of confusion factors" discussed in section III.A. ECF No. 29 at 3–4. According to Kohn, the requested discovery attempts to secure information about the source of the karaoke tracks, their legitimacy, and where they are stored, which would only be relevant if Phoenix had brought copyright claims. Id. at 4. Kohn argues that these discovery requests have no bearing on potential consumer confusion about whether Kohn's shows are sponsored by Phoenix, which is the core of Phoenix's claims. Id.

The court agrees with Kohn. Phoenix has emphasized that it has not brought a copyright action and that it does not allege that Kohn violated its trademark rights in relation to the source of the tangible goods. To avoid having its claims dismissed in the

14

same way that other suits brought by Phoenix and Slep-Tone have been dismissed, Phoenix has instead narrowed its theory of the case to the very specific claim that Kohn's use of the trademark is likely to cause confusion about whether Phoenix sponsors Kohn's karaoke shows. There is no dispute that Kohn does actually display Phoenix's mark during his shows. Additionally, neither party disputes that Kohn is not licensed to use this mark. Thus, the sole topics upon which Phoenix would need to conduct discovery are those that relate to the likelihood of confusion factors. Phoenix's request to search Kohn's computer and hard drive for "any original discs" that Kohn may have in order to determine whether Kohn "is using a counterfeit mark" during his karaoke shows is not proportional to the needs of the case, considering the fact that Kohn has never argued that he was licensed by Phoenix to use the mark. Accordingly, the court denies Phoenix's motion to compel.

**C. Motion to Exclude**

Kohn asks the court to exclude witnesses Bryan and Amy Plyler on the basis that Phoenix failed to identify them in a timely manner. ECF No. 25 at 1. Brian Plyler is a Phoenix employee who, according to Phoenix, investigated Kohn by observing Kohn's karaoke entertainment services at Planet Folleywood on March 23, 2017. ECF No. 30 at 1. His wife, Amy Plyler, accompanied him on the evening of the investigation. Phoenix admits that it did not mention Plyler by name in its initial Rule 26 disclosures, but claims that Plyler was in fact "identified" as "Phoenix's investigator." Id.

A summary of the relevant timeline is helpful:

- October 13, 2017: Deadline for Initial 26(a)(1) disclosures and Rule 26(f) report
- October 28: Deadline for motions to join other parties and amend the pleadings

15

- Expert Witnesses (parties shall file and serve a document identifying by full name, address, and telephone number each person whom they expect to call as an expert at trial)
    - Phoenix Deadline: October 20, 2017
    - Kohn Deadline: November 21, 2017
- Nov 22, 2017: "within 28 days of the end of discovery"
- Nov 30: Phoenix identifies for the first time by name, address, and phone number the formerly unnamed investigator as Brian Plyler
- December 6, 2017: Phoenix identified Amy Plyler for the first time
- December 20, 2017: Deadline for completion of discovery
- January 11: Deadline for dispositive motions
- Feb 28, 2018: Deadline for mediation
- March 1, 2018 term: Deadline for trial

Federal Rule of Civil Procedure 26 requires that a party provide to the other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Phoenix has admitted that the Plylers' testimony is crucial to their case, and that the Plylers conducted their investigation in March of 2017, indicating that Phoenix knew of these witnesses and thus should have disclosed them by the October 13, 2017 deadline. Even if Phoenix somehow intended to argue that Brian Plyler was an expert witness, he should have been disclosed by October 20, 2017. Phoenix failed to meet both deadlines, instead waiting to identify Brian Plyler on November 30, 2017 and Amy Plyler on December 6, 2017.

In Phoenix's Rule 26 Discovery Plan, it proposed a protective order permitting the identity of the investigator be withheld from Kohn. ECF No. 18 at 2. However, Kohn never agreed to keep this information protected, and Phoenix failed to follow any of the steps required by the local rules of this district to obtain a protective order. ECF No. 25 at 2. Local Rules 26.08 and 5.03 together require that a party seeking a protective agreement or order must file certain documents with sufficient explanation of why

sealing is necessary, none of which Phoenix did. See Local Civ. Rules 26.08 and 5.03 (D.S.C.). Further, Local Rule 16.02(d)(2) states that "[w]itnesses identified within the last twenty-eight (28) days of the discovery period will be presumed not to be timely identified, absent a showing of good cause." Id. 16.02(D)(2). As discussed below regarding the Southern States factors, Phoenix has not shown good cause for its untimely disclosure. Even though the witnesses were identified before the final discovery deadline, they were identified long after their original disclosure deadlines, giving Kohn far less time to contact, research, and depose these witnesses, or to incorporate the information obtained from these witnesses into his defense.

Under Federal Rule of Civil Procedure 37, a party that fails to identify a witness pursuant to Rule 26 may not "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Fourth Circuit has identified five factors for courts to consider when determining whether a party's failure to disclose a witness is substantially justified or harmless:

> (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

S. States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003). Courts possess broad discretion in conducting a Rule 37(c)(1) exclusion analysis. Id. at 597.

Phoenix argues that its failure to timely disclose the Plylers as witnesses is substantially justified and harmless. ECF No. 30 at 3. It first claims that Kohn should

17

not be surprised by the late identification of the Plylers because Phoenix's initial disclosures referenced its "investigator," and counsel for the parties frequently discussed the details of the investigation throughout their settlement discussions. Id. at 5. The court does not find this convincing. Although Kohn knew that some unidentified "investigator" existed, there has been nothing to indicate that Kohn could have possibly foreseen that these two customers, out of hundres of other customers at his shows, would end up being the previously identified "investigator." The purpose of the identification deadlines is to allow the opposing party sufficient time to depose the witnesses and strategize for their case, and merely designating an unnamed investigator does not allow Kohn to achieve this. Second, Phoenix contends that any surprise to Kohn can be cured by allowing Kohn to depose the Plylers, and Phoenix agrees to make them available for depositions in Charleston County. This factor does not weigh strongly in favor of either party, as the surprise could indeed be cured if Kohn were able to depose the Plylers and then have additional time to re-file any dispositive motions, the deadline for which passed on January 11, 2018. This relates to the third factor—the extent to which allowing the testimony would disrupt the trial. Adjusting the scheduling order so that Kohn could depose the Plylers and file any additional dispositive motions would delay the trial, which was set to commence in the March 1, 2018 court term. ECF No. 14.

The fourth factor—Phoenix's explanation for failing to timely identify the Plylers—weighs strongly in Kohn's favor. Phoenix argues that counsel for the parties agreed shortly after the discovery conference was held that the parties would delay any discovery until they had exhausted all settlement options in an effort to keep the cost of litigation lower, but admits that this agreement was not reduced to writing. Id. at 2.

Athough the Plylers were disclosed within the last 28 days of the discovery period, which the local rules highly discourage, Phoenix claims that this was due in large part to the parties' agreement to delay discovery until settlement options were exhausted. Id. at 3. The court is unconvinced. The parties cannot choose to ignore the court's order about discovery deadlines. If they had wished to amend the scheduling order—and if they had really "agreed" to delay discovery—then they should have submitted a joint proposed scheduling order to the court. Phoenix cannot now unilaterally claim that both parties agreed to delay discovery, and that this justifies its own late disclosure of a key witness. Phoenix also claims that it initially offered to disclose the Plylers' identities to Kohn, in exchange for Kohn's production of karaoke equipment and discs. ECF No. 30 at 2. This is not a reasonable expectation, as Phoenix was already obligated by the Federal Rules of Civil Procedure and by the order of this court to identify witnesses by the court-ordered deadline. It was not a "fair compromise" for Phoenix to offer to disclose the Plylers' identities—which it was already required to do—in exchange for Kohn producing his karaoke equipment and discs. Regarding the fifth factor—the importance of the testimony—Phoenix claims that the Plylers' testimony is critical to its case, but does not offer further explanation as to why, making it difficult for the court to asses this final factor. Id. at 3. Given that Phoenix's identification of the Plylers was untimely and that most of the Southern States factors weigh in Kohn's favor, the court grants Kohn's motion to exclude.

## IV. CONCLUSION

For the foregoing reasons the court **DENIES** Kohn's motion for summary judgment, **DENIES** Phoenix's motion to compel, and **GRANTS** Kohn's motion to exclude.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 16, 2018**
**Charleston, South Carolina**